## Kenneth J. Kosla *vs.* Board of Appeals of Holden & another.[1]

No. 00-P-341.

Worcester. February 5, 2002. - June 5, 2002.

Present: Mason, Cohen, & Mills, JJ.

*Zoning,* Variance, Parking area, Special permit, Nonconforming use or structure.

A town's zoning board of appeals was without authority either to enforce its by-law with respect to land situated in another town or to grant relief from the by-law in its purported application to that land, and accordingly, the judge in a civil action challenging the board's decision erred in affirming the grant of a variance [65]; however, the judge correctly upheld the board's grant of a special permit for a nonconforming use on an adjacent parcel that was within the town's borders, where the special permit was not dependent upon the grant of the variance, and where the board's conclusion was not arbitrary or capricious [66-67].

This court concluded that a landowner submitted its application for a special permit to restore a structure that did not conform to a town's zoning ordinances within the two-year period permitted by the town's zoning by-laws for such restorations, despite the withdrawal, without prejudice, of the landowner's initial application for a special permit after it had submitted a redesigned plan for the structure, where the zoning board of appeals treated the second application as an amendment to the first. [67-68]

Civil actions commenced in the Superior Court Department on October 28, 1994, February 5, 1996, and November 13, 1998.

After consolidation of the October 28 and February 5 actions, the case was heard by *Carol S. Ball,* J., and after remand and consolidation with the November 13 action, the case was again heard by her.

*Wayne M. LeBlanc* for the plaintiff.

*Leo P. McCabe* for the defendants.

_____

[1] Appalachian Mountain Club.

MILLS, J. Kenneth Kosla appeals from decisions of the Superior Court affirming a grant by the board of appeals of Holden (board) to the Appalachian Mountain Club (AMC) of (i) a variance from the paved parking requirement of Holden's local zoning by-law (by-law), and (ii) a special permit to expand and reconstruct a nonconforming structure that was damaged by fire. Kosla, an abutter, argues that the variance was improperly granted because the evidence at trial did not satisfy the statutory requirements needed to support a variance under G. L. c. 40A, § 10. As to the special permit, Kosla complains that the proposed replacement structure is significantly larger than the original structure and, therefore, would be substantially more detrimental to the neighborhood. Kosla also argues that the special permit is invalid because the application for it was not filed within two years following the fire.

We agree that the variance was improperly granted, but conclude that the board's decision to grant the special permit was within its authority.

1. *Background.* In 1943, the AMC acquired an eleven-acre lot, comprised of three parcels, bisected by the municipal boundary between the towns of Holden and Paxton. The AMC used a building on the Holden portion of the land for approximately fifty years as a club lodge until a fire partially destroyed the building in 1993. Historically, a portion of the AMC lot in Paxton provided approximately fifteen to twenty parking spaces for persons using the lodge.[2] In 1986 Kosla built his house on an adjoining piece of land. His home was built approximately 400

[2]No question has been raised as to the appropriate number of spaces under the by-law, and we act on the assumption that the proposed number of spaces is compliant. We note, by the way, that the board, in its additional final findings, in effect determined that the existing gravel parking lot would not be enlarged, although it was to be cleared of brush with spaces delineated to maximize parking within the area. It was only the assumed paving requirement that was the subject of the variance request.

There appears to have been no explicit consideration given by the parties to the fact that the principal parking area is located in Paxton, while the building is located in Holden. In her decision, the trial judge commented, "What authority the Holden Board had over Paxton land is unclear but the parties have not raised this as an issue here." The record does not disclose that the by-law addresses, in any way, the purported authority of the board to act with respect to land in another town.

feet from the then-existing lodge. The lands owned by the parties and the surrounding area are rural, wooded, and relatively private.

The AMC's applications for variances and special permits were each accompanied by an identical site plan that proposed five paved handicapped parking spaces near the building entrance (on the Holden portion of the lot) and twenty-one unpaved spaces in Paxton. The Paxton parking area was located within the same area as the historic parking area, but was to contain a slightly greater number of spaces. From the record it appears that the parties proceeded upon the assumption that paving was required by the Holden by-law as a condition to the grant of a special permit,[3] unless excepted by variance relief,[4] and that the board could exercise jurisdiction to grant that relief even though the land is in Paxton. The board's grant of variance relief and the special permit implicitly incorporate the parking lot in Paxton as fulfilling the parking requirement, and by grant of variance relief, purportedly permitted it to remain unpaved.

The board specifically found that the AMC's proposed building was not substantially more detrimental to the neighborhood. The judge, in her findings, described the building as one story with a full basement, with a footprint slightly larger than the historic building, but containing essentially the same square footage plus a basement. The judge explicitly found that the building would be "approximately the same size as the original and, in fact, removes the bunk bed area in the original building

---

[3]Table 4 of the Holden by-law, "Off-Street Parking Standards," is contained in § VIII, entitled "Off-Street Parking and Loading Regulations." Section VIII.A. provides that "[i]n any district, if any structure is constru[cted], enlarged or extended . . . after the effective date of this bylaw, parking . . . spaces shall be provided in accordance with Table 4 . . . . An existing structure which is enlarged . . . after the effective date of this bylaw, shall be required to provide parking . . . spaces in accordance with [Table 4] for the entire structure . . . , unless the increase in . . . measurements amounts to less than 25 percent . . . ."

Section VIII.C.1.b. further provides that all "parking . . . containing over five spaces . . . shall be [paved]."

[4]The record does not contain evidence of an opinion or ruling by the Holden building inspector (or other responsible officer) as to this required condition. The companion applications for special permit and variance certainly assume applicability.

which encouraged overnight use." The judge also made findings with respect to "some increased use of the property" and occasional off-street parking. We consider Kosla's appeal to bring to this court the judge's approval of the board's grant of variance relief and special permit (upon AMC's second application) incorporating the smaller building.[5]

2. *The variance.* The Holden by-law "could have no intent or purpose in respect of" the Paxton land. *Lapenas* v. *Zoning Bd. of Appeals of Brockton*, 352 Mass. 530, 533 (1967). This means, inter alia, that the paving requirement of the Holden by-law cannot apply to the Paxton parking lot, and the variance is, thus, ultra vires. The board, accordingly, was without authority either to enforce the by-law with respect to the Paxton land or to grant relief from the by-law in its purported application to the Paxton land. Accordingly, the judgment affirming the grant of a variance must be reversed.[6]

---

[5]We summarize the overly complicated procedural history of this relatively simple case. In July of 1994 the AMC filed companion applications with the town clerk seeking a variance and special permit. It also filed an application for the planning board's approval of a site plan (that application is not relevant to this appeal). As first proposed, the redesigned lodge would have contained approximately twice the gross floor area of the historic structure. The board granted the first variance and special permit applications in 1994, and Kosla appealed. While that appeal was pending, the AMC redesigned the building, substantially reducing it in size, and filed a second set of applications (for variance and special permit) incorporating the smaller building, but proposing the same unpaved parking area in Paxton. The board granted the second set of applications in 1996, and Kosla again appealed pursuant to G. L. c. 40A, § 17. The cases were consolidated and tried together, resulting in a remand of both special permits for further hearing on the question of substantial detriment. The board, upon remand, permitted the AMC to withdraw its initial special permit application "without prejudice" and found that the smaller building was not substantially more detrimental than the historic structure. The Superior Court judgments, which are the subject of this appeal, approved the "granting of a parking lot variance" and the grant of a special permit on the smaller building.

[6]Even if this were not so, the statutory requirements for a variance are not evidenced. See *Whelan* v. *Zoning Bd. of Appeals of Norfolk*, 430 Mass. 1009, 1009-1010 (2000). The judge made no findings with respect to the soil conditions or shape of the lot, and there were no findings that distinguished the AMC land from other land in the zoning district in which it is located. The AMC presented testimony from a civil engineer concerning the design of the parking area, his observations at the site and "all the physical features located on the properties." When asked of his familiarity with the area and visual

3. *The special permit.* The by-law provides that no noncon-
forming structure or use shall be extended, altered, changed or
reconstructed unless it is specifically permitted by the by-law,
or the board grants a special permit therefor.[7] In its application
for a special permit the AMC explicitly represents that the park-
ing area is located on an adjoining 3.23 acre parcel in Paxton,

observations of the surrounding land, the witness testified that the land
"slope[s] similarly but maybe not as steep as [the AMC site]." When asked
for a professional opinion as to whether the Paxton land area planned for
parking is substantially different from any of the other land in that zoning
district, the witness responded, "[I]t is the only site that is leveled for a
ground parking lot of that size. . . . In other words, there are no trees. It is
stripped of its vegetation. Someone put some gravel there. . . . It is different
in that respect . . . the rest is pretty much wooded or residential."

[7]Section IX of the by-law is entitled "Nonconforming Uses, Structures and
Lots," and provides in pertinent part:

> "A. APPLICATION: The provisions of this section apply to noncon-
> forming uses, structures and lots as created by the initial enactment of
> this bylaw or by any subsequent amendment. Unless specifically permit-
> ted by the provisions of this section, no nonconforming structure or use
> shall be extended, altered, changed or reconstructed . . . unless either
> (a) it is specifically permitted by the provisions of this section, or
> (b) the Zoning Board of Appeals grants a special permit therefor after
> finding that it is not substantially more detrimental to the neighborhood
> than the existing nonconforming structure, use, lot or open space.

> "B. EXTENSION AND ALTERATION

> 1. Any nonconforming structure may be altered or extended and the
> conforming use extended throughout the altered or extended portions
> provided that any resultant alteration or extension shall not cause the
> structure to violate the applicable provisions of Tables 2 through 5
> inclusive of this bylaw relative to the district in which the structure is
> located.

> . . .

> "C. RESTORATION: Any nonconforming structure partially or totally
> destroyed by fire or any catastrophe, may be restored to the original use
> and bulk of the original structure within 2 years of the occurrence of
> such fire or catastrophe. Restoration after 2 years of the date of such
> fire or catastrophe shall not be permitted except in accordance with the
> use, yard, height and bulk regulations of the bylaw.

> "D. ABANDONMENT: Any nonconforming use of a structure or lot
> which has been the subject of abandonment shall not be used again
> except for a conforming use."

and that "[t]he existing gravel parking lot will be cleared . . . for 21 cars." The application also incorporates a site plan that delineates the unpaved parking area in Paxton.

Contrary to the apparent assumptions of the board and the parties, we hold that the special permit is not dependent upon the variance. The judge's findings as to the new building substantiate the grant of a special permit under the criteria of § IX of the by-law. Though, as noted, the board apparently based its decision to grant the special permit, in part, on its grant of the parking lot variance, that the variance was invalid does not compel a conclusion that the special permit also fails.

The board's consideration of the proposed structure and its intended use included evaluation of the adequacy of the parking AMC proposed to serve it. The board's grant of the special permit reflected its determination that the structure as proposed would not be substantially more detrimental to the neighborhood. As we have observed, *supra*, the board could not have enforced the paving provisions of the by-law in respect of the Paxton land. Moreover, as the proposed parking area was essentially the same as the parking area that historically had served the lodge, we cannot say that the board was arbitrary or capricious in its conclusion that the proposed structure and use would not be substantially more detrimental to the neighborhood. Compare *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 355-356 (2001).[8]

4. *Two-year time limitation on restoration after fire.* The judge determined that the two-year restoration limit of § IX.C. of the by-law was applicable to the proposed lodge, but that, "[b]ased on the 'tack back' provisions of G. L. c. 40A, § 9, [the] two year period [had] been kept alive by the appeals before th[e] court." Kosla argues that the two-year limitation is not extended by G. L. c. 40A, § 9, because of a gap in the "tack back" resulting from AMC's withdrawal, without prejudice, of its first special permit application. He argues that the operative

[8]The fact that the board apparently relied on its determination in respect of the variance in reaching its conclusion on the special permit does not impair the validity of the special permit. The board's essential determinations of the adequacy of parking, as a matter of fact, do not depend on the legal status of such parking under the Holden by-law.

special permit application (the second of two) was not filed within two years of the fire, and as a result, the AMC cannot construct a nonconforming structure at this time or at any time in the future. We understand that he argues that the phrase "determination of an appeal" in G. L. c. 40A, § 9, twelfth par., as amended through St. 1985, c. 408, as applied to this case, should include only the appeal from the board's grant of the second special permit application, completely disassociating that appeal from the initial application, and notwithstanding the "without prejudice" and "preservation of rights" aspect of the conditional withdrawal of the initial special permit while that matter was on remand to the board. Kosla's argument would elevate form over substance. The board itself treated the second permit as an amendment to the first permit.

In the circumstances of this case the several matters of appeal of several grants of relief constitute a single "appeal" for purposes of G. L. c. 40A, § 9, twelfth par.

5. *Conclusion.* The judgment dated May 5, 1998, affirming the grant of petitions for variance, is reversed. The judgment dated January 27, 1999, dismissing the plaintiff's complaint as to the special permits, is affirmed.

*So ordered.*